IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

MAJOR CURRIE,

      Plaintiff,

vs.                                      No. 12-2915-JPM-dkv

JP MORGAN CHASE BANK, N.A.;
WILSON & ASSOCIATES, LLC;
and JOHN DOES 1-20,

      Defendants.

_____

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

_____

On October 19, 2012, the plaintiff, Major Currie, a resident of Shelby County, Tennessee, proceeding *pro se,* filed a "Complaint to Restrict and Prohibit Foreclosure and Sale, Violation of the EFT Act, Violation of the Consumer Protection Act, Violation of Truth in Lending Act (TILA), Violation of the UCC, and For Damages and Demand for Trial." (D.E. 1), accompanied by a motion seeking leave to proceed *in forma pauperis*, (D.E. 2). On October 25, 2012, the court issued an order granting Currie leave to proceed *in forma pauperis*, (D.E. 3),[1] and referred the case to the *pro se* staff attorney for

_____

[1]     The court seriously questions the accuracy of Currie's Application to Proceed in District Court Without Prepaying Fees or Costs. (D.E. 2.)  In his application, Currie lists no other real estate owned by him and no income from real property or rental income. According to the public records of the Assessor of Property for Shelby County, Tennessee, there are six parcels of real property held in the name of Major Currie, including the property which is the subject of this lawsuit, all of which share common owner addresses. Collectively, the six parcels have an appraised value in 2012, the

screening pursuant to Local Rule 4.1.  On December 17, 2012, Currie filed an "Amended Complaint to Restrict and Prohibit Foreclosure and Sale; For Violation of Electronic Fund Transfers Act "EFTA", Violation of Fair Debt Collection Practices Act "FDCPA", Violation of Consumer Credit Protection Act, Extortion, and Fraud and Demand for Trial."  (D.E. 5).[2]  Named as defendants are: JP Morgan Chase Bank, N.A. ("Chase"); Wilson and Associates, LLC ("Wilson"); and John Does 1-20.[3]

This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.  (Order of Reference, D.E. 7.)  For the reasons that follow, it is recommended

---

year in which this lawsuit was commenced, of approximately $299,000. Courts may take judicial notice of public records.  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997). Nevertheless, for the purposes of this Report and Recommendation, the court will treat Currie as having been granted IFP status.

[2]    Both the complaint and the amended complaint are obviously a form complaint used by other *pro se* plaintiffs in this district in similar lawsuits.  The amended complaint refers to case law from other states, (see, e.g., ¶¶ 31-32), identifies the plaintiff by the incorrect gender, (see, e.g., ¶ 10), and identifies MERS, a defendant in another case, as remaining on the title (*see, e.g.,* ¶ 35), although MERS is not a party to this case.  Indeed, the nearly identical complaint was filed in *Nooh v. Recontruct Co.*, No. 11-2506-STA-dkv (W.D. Tenn. June 20, 2011), ECF No. 1 (dismissed Mar. 29, 2012).

[3]    Service of process cannot be made on unnamed or fictitious parties.  The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties.  *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that the complaint be dismissed against the John Doe defendants.

that this case be dismissed for lack of subject-matter jurisdiction and for failure to state a claim.

## I. PROPOSED FINDINGS OF FACT

This is an action to prohibit a nonjudicial foreclosure of real property located at 909 South McLean, Memphis, Tennessee 38114. According to the amended complaint, on or about November 29, 2012, Wilson, on behalf of Chase issued a notice to Currie, via written correspondence, that his mortgage loan had been referred to foreclosure proceedings. (Am. Compl., D.E. 5 ¶ 13.) The amended complaint states that Currie "executed a Deed of Trust to United Lending Company, the original mortgage lender" which Deed of Trust was filed on October 14, 1993, and recorded with the Shelby County Register as Instrument No. DX7032. (*Id.* ¶ 12.) The document Currie attached to the complaint as Exhibit 2, however, is not a Deed of Trust. Rather, it is a "Cash Deed for Tennessee" dated October 14, 1993, recorded as Instrument No. DX7032 on October 20, 1993, pursuant to which Henry Cisneros, Secretary of Housing and Urban Development, conveyed the property to Major Currie for the sum of $10.00. (*Id.*, Ex. 3.) According to the public records of the Office of the Shelby County Register, Currie executed a Deed of Trust dated April 30, 1997, recorded as Instrument No. GN 5095 on May 2, 1997, pursuant to which Currie transferred to United Companies Lending Corporation an interest in the real property located at 909 South McLean Road, Memphis, Tennessee 38114 as security for repayment of a loan of the same date, April 30, 1997, in the amount of $60,400. By an "Assignment of Deed of Trust," recorded in Register's Office as Instrument No. 05052337, effective November 9, 2000, Deutsche Bank

National Trust Company ,as custodian or trustee for United Companies Lending, transferred to EMC Mortgage Corporation ("EMC") all beneficial interests under the Deed of Trust (Instrument No. GN 5095), together with the note and money due. By a "Corporate Assignment of Deed of Trust," recorded in Register's Office as Instrument No. 12039924, on April 10, 2012, EMC transferred the Deed of Trust (Instrument No. GN 5095) together "with all interest secured thereby, all liens and rights due or to be come due thereon", to Chase.

The complaint alleges that Currie attempted to pay the balance due on his mortgage to Chase by an electronic funds transfer ("EFT") in the amount of $73,156.72 sent by certified mail, that Chase refused to accept the EFT, and that Chase failed to return the unidentified EFT instrument. (*Id.* ¶¶ 36-37).[4] Attached to the complaint as exhibits are: (1) a USPS certified mail label addressed to Chase,, article number 7012 1010 0001 8244 9497, (2) USPS confirmation indicating the article was delivered on September 21, 2012, and (3) an item that is similar to a check from Terry Wayne Green on a Regions Bank account in the amount of $73,156.750 which is marked "EFT ONLY," "FOR DISCHARGE OF DEBT," "Account #0005671656" on the front.[5] (*Id.*, Exs. 4,5.) Currie contends that the refusal to

---

[4]    In paragraph 36 of the complaint when referring to the EFT and certified mail, Currie references Exhibit 4 which is an undated and unsigned certified mail receipt addressed to Chase, and it contains no information as to the contents of the mail.

[5]    Interestingly, in the case of *Fannie Hightower v Capital One Auto Finance*, Case No. 12-3042 JDT-dkv, Western District of Tennessee, Terry Wayne Green also suppled an "EFT" on behalf of Fannie Hightower payable to Capital One Auto Finance.

credit his account or return the EFT instrument has discharged his debt. (*Id.* ¶ 38.)

The complaint sets forth the following causes of action: (1) injunctive relief; (2) declaratory relief; (3) fraud and misrepresentation; (4) wrongful foreclosure; (5) slander of title; (6) unlawful interference with possessory interest; (7) conflict of interest; and (8) lack of standing to commence foreclosure action. (*Id.* ¶¶ 15-75.) Currie seeks preliminary and permanent injunctive relief enjoining the defendant from foreclosing on his house, declaratory relief including a declaration that the defendants have no enforceable lien on his house, reinstatement of Currie on the title to the property, cancellation of the foreclosure sale, and compensatory damages in the amount of $73,156.75 and punitive damages in the amount of $500,000.

## II. PROPOSED CONCLUSIONS OF LAW

It appears that Currie is arguing that no defendant has the original note to prove that it is authorized to commence foreclosure proceedings, or, that he paid the note in full by tendering an electronic funds transfer by certified mail to Chase, and because the EFT was rejected, the underlying note should be considered paid in full and discharged.

A. <u>28 U.S.C. § 1915(e)(2) Screening</u>

This report and recommendation will constitute the court's screening. The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

(i)      is frivolous or malicious;

(ii)     fails to state a claim on which relief may be granted; or

(iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

B.   <u>Standard of Review for Failure to State a Claim</u>

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original).  "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be

liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 Fed. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 Fed. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 Fed. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C. <u>Subject-Matter Jurisdiction</u>

As an initial matter, the court must determine whether it has subject-matter jurisdiction over this action. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside

this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)("Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 ("It is a fundamental precept that federal courts are courts of limited jurisdiction."). Federal courts are obliged to act *sua sponte* whenever a question about jurisdiction arises. *See, e.g., Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 (stating that "a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938); *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte.*"). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

In his complaint, Currie alleges the following bases for this court's jurisdiction:

> The United States District Court for the Western District of Tennessee has jurisdiction based on "diversity jurisdiction" pursuant to The <u>United States Constitution</u>, <u>Article III, § 2</u> and 28 U.S.C. § 1331. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Pending foreclosure sales on Plaintiff's real property is in violation of the Constitution and laws of the United States. The Plaintiff also invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(4) in that the Plaintiff seeks to redress deprivation of rights guaranteed by both the Constitution and federal statutes.

(Amend. Compl., D.E. 5 ¶ 9 (emphasis in original).)

1. Diversity Jurisdiction

According to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity of citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a).[6] A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)(citations omitted). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); *see also Johnson v. New York*, 315 Fed. App'x 394, 395 (3d Cir. 2009)(per curiam); *Sanders*

---

[6]    The complaint mis-cites 28 U.S.C. § 1331 as governing diversity jurisdiction. That statute addresses federal-question jurisdiction.

*v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)(complaint did not properly allege diversity jurisdiction); *Leys v. Lowe's Home Ctrs., Inc.*, 601 F. Supp. 2d 908, 912-13 (W.D. Mich. 2009)(complaint and notice of removal did not adequately establish diversity jurisdiction); *Ellis v. Kaye-Kibbey*, No. 1:07-cv-910, 2008 WL 2696891, at *2-3 (W.D. Mich. July 1, 2008)(dismissing complaint for failure adequately to allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1208 (3d ed. 2004). Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Currie has failed to allege sufficient facts in his amended complaint to establish diversity jurisdiction. The amended complaint states Currie is "residing at c/o 3705 Wood Glade Lane, Memphis, Shelby County, Tennessee," but the amended complaint does not allege his citizenship. (*See* Amend. Compl., D.E. 5 ¶ 1.) The amended complaint further alleges that the defendant JP Morgan Chase, N.A., is a Delaware corporation with its headquarters in New York, New York; and that the defendant Wilson & Associates, LLC, is an Arkansas corporation with its headquarters in Little Rock, Arkansas. Although the amended complaint fails to specifically allege the citizenship of the parties, for purposes of this analysis the court assumes Currie is a citizen of Tennessee, Chase is a citizen of New York and Delaware, and Wilson is a citizen of Arkansas.

The court must also determine whether the amount in controversy in a diversity case exceeds the jurisdictional threshold of $75,000. Because this case was originally filed in federal court, "the sum claim controls if it was made in good faith." *St. Paul Mercury Indemnity Co.*, 3030 U.S. 283, 288-89 (1938). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (*Id.*) "Where state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement. Absolute certainty is not required. It is sufficient if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount." *Kovacs v. Chelsely*, 406 F.3d 393, 397 (6th Cir. 2005.)

In addition to compensatory damages, potential awards of punitive damages should be included in determining the amount in controversy. *Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975); *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983). "Punitive damages must be considered unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001).

On its face, the amended complaint seeks compensatory damages in the amount $73,156.72 which is less than the jurisdictional threshold of $75,000. (Amend. Compl., D.E. 5 ¶¶ 1-3.) Currie also seeks punitive damages in the amount of $500,000. Currie has included a count in his complaint for fraud and misrepresentation. Under Tennessee law, "a court may . . . award punitive damages only

if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (1992).

Currie's claim for fraud is frivolous and not brought in good faith. "A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation." *Id.*, *First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn.1991). Rule 9 requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "The Plaintiff[] must plead more than a generalized grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b)." *Masterson v. Meade Cnty. Fiscal Court*, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007)(citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)(quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). A plaintiff must, "[a]t a minimum," "allege the time, place and contents of the misrepresentations." *Id.* (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory allegations that the Defendants' conduct

was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). A plaintiff who asserts a claim based on a failure to disclose must plead all the elements with particularity. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 72-73, 101 (3d ed. 2004).

In his complaint, Currie fails to identify any false statement allegedly made by either of the defendants, and much less the time and date of any false representation. Currie's complaint merely cites the elements of a cause of action for fraud and includes absolutely no factual allegations. Accordingly, Currie fails to plead fraud with the particularity required by Rule 9. Thus, is it certain that Currie will not recover any punitive damages for fraud. The mere possibility of punitive damages is insufficient to prove the amount in controversy is satisfied.

Currie's purported state-law claim for Slander of Title likewise is not supported by any plausible facts and is frivolous and not brought in good faith. To establish a claim for slander of title under Tennessee law, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statement proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999). "A person acts maliciously when the person is motivated by ill will, hatred, or personal spite." *Hodges*, 833 S.W.2d at 901. The complaint fails to allege any malice or any facts that would give rise to a reasonable inference of malice. *See Waterhouse v. McPheeters*, 145 S.W.2d 766, 767 (Tenn.

13

1940)(allegations of malice must be in express terms or by showing facts which would give rise to a reasonable inference of malice). Thus, Currie fails to state a claim for slander of title, and it is certain he will not recover any punitive damages for slander of title.

Moreover, Currie has not alleged how he sustained any damages. The amount of compensatory damages he seeks is the same amount he attempted to pay by an alleged "electronic funds transfer." There are no allegations that he actually paid that amount or that the foreclosure took place or that title has been transferred out of his name. Plus, the value of the property which is the subject of Currie's claim for injunctive relief does not exceed $75,000. According to the public records of the Assessor of Property for Shelby County, Tennessee, the appraised value in 2012 of the property located at 909 South McLean was only $58,400. In Tennessee, there must be proof of actual damages before punitive damages can be awarded. *Liberty Mut. Ins. Co. v. Stevenson*, 368 S.w.2d 760, 761 (Tenn. 1963).

Thus, Currie has failed to plead sufficient facts to establish the requisite amount in controversy for diversity jurisdiction, and the court lacks diversity jurisdiction.

2. Jurisdiction under 28 U.S.C. § 2241

The other federal statutes cited by Currie are insufficient to confer federal jurisdiction. Currie cites 28 U.S.C. § 2241 as a basis for jurisdiction. Section 2241, which governs writs of habeas corpus, requires that the movant be "in custody." *See* 28 U.S.C. §

14

2241(c). Currie is not a prisoner; therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 2241.

3. Jurisdiction under 28 U.S.C. § 1343(4)

Currie also cites 28 U.S.C. § 1343(4), which confers federal jurisdiction over suits "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4). The Supreme Court has rejected the position that § 1343(4), now § 1343(a)(4), "encompass[es] all federal statutory suits," *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979), or "allow[s] jurisdiction without respect to the amount in controversy for claims which in fact have nothing to do with 'civil rights,'" *id.* at 620.

> [T]he Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote. While the words of [that] statute[] are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which fall well outside the common understanding of their terms.

*Id.* at 621. In *Chapman*, the Supreme Court held that the Social Security Act is not a statute providing for "civil rights" within the meaning of § 1343(a)(4). *Id.* at 623.

Similarly, Currie's complaint in this case does not allege a violation of any federal statute providing for the protection of civil rights. Although the complaint contains scattered references to federal statutes, (*see, e.g.*, Amend. Compl. D.E. 5 ¶ 14(a)(promissory note "is specifically governed by federal law," without specifying the law), ¶¶ 16, 20-21 (referring to "FDCA,"

15

without citation or elaboration), ¶ 50 (National Currency Act of 1863, 12 Stat. 665), ¶¶ 50-52 ("Public Law Volume 13 of the 39th Congress Stat 99-118"), ¶ 71 ("15 U S C sec. 1635(a) and (b) and 12 CFR sec. 226.23(b)"),[7] ¶ 73 (Defendants "conducted an illegal enterprise within the meaning of RICO statute"), and ¶ 74 ("civil RICO")), none of the federal statutes cited in Currie's complaint provides for the protection of civil rights.  Therefore, there is no jurisdiction under 28 U.S.C. § 1343(a)(4).

4.  Federal-Question Jurisdiction under 28 U.S.C. § 1331

It is also necessary to consider whether there might be subject-matter jurisdiction under 28 U.S.C. § 1331, which provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Despite scattered references to the United States Constitution, the complaint, however, does not allege a constitutional violation or that the defendants have violated any treaty.  Nor does the complaint assert a viable claim arising under any federal statute, either.  Even if the scattered references in the complaint to various federal statutes discussed below were construed as asserting claims under those statutes, the complaint still does not sufficiently allege a viable federal claim.

a.  *Truth in Lending Act ("TILA") 15 U.S.C. §§ 1601 et seq.*

The complaint fails to state a claim under the Truth in Lending Act ("TILA").  The only reference to the TILA in the complaint occurs

_____

[7]     The statutory provision is part of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*

in the count entitled "Defendants Lack Standing to Commence
Foreclosure Action/" (Amend. Compl., D.E. 5 at 23). Paragraphs 70
and 71 of that cause state:

> 70. Defendant's cause of action is barred in whole
> or in part due to Defendant's violation of state and
> federal Truth in Lending Acts.
>
> 71. Said violation, in addition to the fact that
> Plaintiff did not properly receive Notices [sic] Right to
> cancel, constitute violation of 15 U S C sec. 1635(a) and
> (b) and 12 CFR sec. 226.23(b) and are thus a legal basis
> for and legally extend Plaintiff right to exercise the
> remedy of rescission.

(Amend. Compl., D.E. 5 ¶¶ 70-71.)  Assuming that Currie is claiming

that the defendants did not provide him the notice required by §

1635(a), rescission is untimely.[8]  Under 15 U.S.C. § 1635(f), "[a]n

_____

[8]    15 U.S.C. § 1635(a) provides as follows:

(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the
case of any consumer credit transaction (including opening
or increasing the credit limit for an open end credit plan)
in which a security interest, including any such interest
arising by operation of law, is or will be retained or
acquired in any property which is used as the principal
dwelling of the person to whom credit is extended, the
obligor shall have the right to rescind the transaction
until midnight of the third business day following the
consummation of the transaction or the delivery of the
information and rescission forms required under this
section together with a statement containing the material
disclosures required under this subchapter, whichever is
later, by notifying the creditor, in accordance with
regulations of the Board, of his intention to do so. The
creditor shall clearly and conspicuously disclose, in
accordance with regulations of the Board, to any obligor
in a transaction subject to this section the rights of the
obligor under this section. The creditor shall also
provide, in accordance with regulations of the Board,
appropriate forms for the obligor to exercise his right to
rescind any transaction subject to this section.

obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . ." 15 U.S.C. § 1635(f). Here, the mortgage transaction that is the subject of this lawsuit occurred October 14, 1993. (*See* Amend. Compl., Ex. 3, D.E. 5-3.) More than three years have passed, and Currie's right to rescission is time barred.

---

(b) Return of money or property following rescission

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. §§ 1635(a)-(b).

This limitations period is not subject to equitable tolling. *Famatiga v. Mortg. Elec. Registration Sys., Inc.*, No. 10-10937, 2011 WL 3320480, at *4 (E.D. Mich. Aug. 2, 2011)("Courts in this district have interpreted § 1635(f) to completely preclude equitable tolling to the statute of limitations for a plaintiff's right to rescind."); *Reed v. Duetsche Bank Nat'l Trust Co.*, No. 1:09-cv-692, 2009 WL 3270481, at *4 (W.D. Mich. Oct. 5, 2009)(collecting cases); *Bolden v. Aames Funding Corp.*, No. 03-2827, 2005 WL 948592, at *3 (W.D. Tenn. Feb. 25, 2002); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998)(noting that TILA "permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run"). A time-barred TILA violation is not a defense to a subsequent foreclosure. *Beach*, 523 U.S. at 411-12. In addition, any claim for damages for a violation of TILA must be filed within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640. Therefore, the complaint fails to state a claim under TILA, and TILA does not provide a basis for federal-question jurisdiction.

> b. *Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.*

The complaint also refers, in conclusory fashion, to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* These references are also found in the count entitled "Defendants Lack Standing to Commence Foreclosure Action" (Amend. Compl., D.E. 5 at 23.) Specifically, paragraphs 73 and 74 state as follows:

> 73. On information and belief and given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a

part of a predetermined and identifiable CMO, all
defendants share in the illegal proceeds of the
transaction; conspired with each other to defraud the
Plaintiff out of the proceeds of the loan; acted in concert
to wrongfully deprive the Plaintiff of his residence; acted
in concert and conspiracy to essentially steal the
Plaintiff [sic] property and/or convert the Plaintiff's
property without providing Plaintiff reasonable equivalent
value in exchange; and conducted an illegal enterprise
within the meaning of RICO statute.

74. The Supreme Court found that the Plaintiff in a
civil RICO action need establish only a criminal
"violation" and not a criminal conviction. Further, the
Court held that the Defendant need only have caused harm to
the Plaintiff by the commission of a predicate offense in
such a way as to constitute a "pattern of racketeering
activity." That is, the Plaintiff need not demonstrate
that the Defendant is an organized crime figure, a mobster
in the popular sense, or that the Plaintiff has suffered
some type of special Racketeering injury; all that the
Plaintiff must show is what the Statute specifically
requires. The RICO Statute and the civil remedies for its
violation are to be liberally construed to effect the
congressional purpose as broadly formulated in the Statute.
*Sedima, SPRL v. Imrex Co.*, 473 US 479 (1985).

(Amend. Compl., D.E. 5 ¶¶ 73-74.)

The complaint does not identify the provisions of RICO that

defendants allegedly violated, but the court assumes that Currie is

proceeding under Section 1964(c), RICO's provision authorizing civil

suits for a violation of 18 U.S.C. § 1962. It provides provides, in

pertinent part, that:

Any person injured in his business or property by reason of
a violation of section 1962 of this chapter may sue
therefor in any appropriate United States district court .
. . .

18 U.S.C. § 1964(c). To establish a violation of Section 1962,[9] a plaintiff must show: "(1) that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3) that there was a nexus between the pattern of racketeering activity and the enterprise; and (4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.*, 2010 F.3d 696, 699 (6th Cir. 2001). An "enterprise" can be proven by showing that a group of persons formed an ongoing organization; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged. *Id*. RICO defines racketeering activity to include any act that is indictable under certain provisions of title 18 of the United States Code, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341.

The complaint contains no factual allegations that support the elements of a civil RICO cause of action. There are no allegations of an enterprise, of two or more predicate offenses, or of an injury given that the foreclosure has not taken place.

Assuming Currie's allegations of fraud are meant to be the underlying predicate offense, his complaint still fails to state a civil RICO cause of action. A civil RICO claim based on allegations of fraud must also comply with the particularity pleading requirement

---

[9]     18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

of Rule 9 of the Federal Rules of Civil Procedure. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 356 n.4 (6th Cir. 2008); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 911 (E.D. Cal. 2006). The court has already determined herein that Currie has failed to plead a claim for fraud with particularity as required by Rule 9, in that he failed to identify any false statement allegedly made by any defendant, and much less, the time and date of any false representations. Therefore, the various references to RICO are insufficient to state a civil RICO claim and cannot form the basis for federal-question jurisdiction.

c. *Claims under the National Currency Act*

The various references to the National Currency Act and the assertion that "Federal Reserve notes are not money by law" are insufficient to invoke federal-question jurisdiction. The theory that Federal Reserve notes are not legal tender is meritless as a matter of law, as another district court in this circuit has explained:

> In arguing that the system of lending money in the United States is unconstitutional, Plaintiff cites Sections 8 and 10 of Article I in the United States Constitution. . . . Nonetheless, ever since the Supreme Court ruled in *The Legal-Tender Cases*," in 1884, Courts have consistently held that neither of these provisions of the Constitution renders the country's current money-lending system unconstitutional. *See Julliard v. Greenman* ("*The Legal-Tender Cases*"), 110 U.S. 421, 447-48, 4 S. Ct. 122, 28 L. Ed. 204 (1884) (holding that Congress has the power of making the notes of the United States a legal tender in payment of private debts, and that such power is not restricted by the fact that its exercise may affect the value of private contracts); *United States v. Ri[f]en*, 577 F.2d 1111, 1113 (8th Cir. 1978) (art. I, § 10 of the Constitution does not "limit Congress' power to declare what shall be legal tender for all debts," and the fact

that the type of money in use is neither gold nor silver does <u>not</u> render a loan unconstitutional); *Foret v. Wilson*, 725 F.2d 254 (5th Cir. 1984) (dismissing plaintiff's argument that only gold and silver coin may be constituted legal tender by the United States); *Edgar v. Inland Steel Co.*, 744 F.2d 1276, 1277 (7th Cir. 1984) (finding untenable plaintiff's argument that federal reserve notes are not "money" because they are not backed by gold and silver specie); *L.R. Nixon v. Phillipoff*, 615 F. Supp. 890 (N.D. Ind. 1985) (finding that plaintiff's [sic] misinterpreted art. I, §§ 8 and 10 of the Constitution, and holding that Section 10 acts only to "remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender"); *Kolb v. Naylor*, 658 F. Supp. 520 (N.D. Iowa 1987) (finding that the loans to plaintiffs constituted the lending of money and the creation of a debt, rather than the creation of money); *United States v. Schiefen*, 926 F. Supp. 877 ([]D.S.D. 1995) (noting that Schiefen's argument that United States currency is unconstitutional "unbacked paper" has been rejected by numerous courts); *State ex rel. White v. Mack*, 93 Ohio St. 3d 572, 757 N.E.2d 353, 355 (Ohio 2001) (citing *Baird v. Cty. Assessors of Salt Lake & Utah Ctys.*, 779 P.2[d] 676, 680 (Utah 1989)) (finding that the provision in art. I, § 10 of the United States Constitution is not a directive to states to use only gold or silver coins, but is "merely a restriction preventing states from establishing their own legal tender other than gold or silver coins").

*Nixon v. Phillipoff* provides a thorough analysis of why courts consider federal reserve notes to be a constitutional form of legal tender. *See* 615 F. Supp. 893. In *Nixon*, plaintiff, a *pro se* litigant, sued the individual who had filed a mortgage foreclosure action against him, the clerk of court who had accepted the filing fee for that foreclosure, and the judge who had accepted jurisdiction over the foreclosure. *See id.* at 890. Plaintiff's argument rested, in part, on his assertion that art. I, § 10, clause 1 of the United States Constitution requires a state to accept and recognize only gold and silver coin as legal tender. *See id.* at 893. The court, however, rejected Nixon's argument, concluding:

Nixon's interpretation of article 1, § 10 creates a rather curious inconsistency with article 1, § 8, clause 5. If states can only recognize gold and silver coin as legal tender, then Congress does not have complete power to declare what shall constitute legal tender for payment of all debts, for a declaration that a treasury note or federal reserve note was legal tender would fly in the face of the restriction of § 10. While

this is the conclusoin [sic] which Nixon wants
this court to reach (in effect declaring federal
reserve notes illegal), it flies in the face of
the clear import of § 8, clause 5's unrestricted
language. The power to coin money necessarily
carries with it the power to declare what is
money, and the constitution does not limit
Congress to gold and silver coin ... It strains
logic and constitutional interpretation to claim
that the framers of the constitution sought to
limit Congress' power to coin money via an
implication derived from a restriction directed
not at Congress but at the states.

*Id.* at 893. Moreover, the court explained that,

Nixon has misinterpreted the import of § 10's
prohibition. Courts have uniformly interpreted §
10 as prohibiting states from declaring anything
other than gold or silver coin as legal tender
... yet [*The Legal-Tender Cases*"] do not
interpret § 10 as requiring states to accept only
gold and silver coin as tender, nor could they,
as they both recognize the unrestricted power of
Congress to declare what shall constitute legal
tender, including bills of credit, treasury
notes, and federal reserve notes. In short, § 10
acts only to remove from the states the inherent
sovereign power to declare currency, thus leaving
Congress the sole declarant of what constitutes
legal tender. Thus ... the states are
constitutionally compelled to accept [federal
reserve notes] as legal tender.

*Id.*

In this case, where Plaintiff's arguments all rest on
his assertion that, according to art. I, §§ 8, and 10 of
the constitution, Defendants unconstitutionally created
money, his argument fails as a matter of law. Private
parties may enter into transactions to trade whatever they
agree upon as having equal value, and they are not limited
to gold and silver coins. . . . Though Plaintiff asserts
that Defendants' loans were unlawful because they did not
provide him with any "real, gold or silver backed money" as
constitutionally mandated, as evidenced above, Courts have
long held that such transactions are both <u>legal</u> and
<u>constitutional</u>. Hence, Plaintiff's claims are entirely
without merit.

*Rudd v. KeyBank, N.A.*, No. C2-05-CV-0523, 2006 WL 212096, at *4-6

(S.D. Ohio Jan. 25, 2006)(emphasis in original); *see also Rahman El*

*v. First Franklin Fin. Corp.*, No. 09-cv-10622, 2009 WL 3876506, at *7
(E.D. Mich. Nov. 17, 2009)(same, collecting cases).

Currie's contention that mortgages having a term longer than
five years are illegal is meritless. (*See* Amend. Compl., D.E. 5 ¶
53.)

> 12 U.S.C. § 371 expressly authorizes national banks to
> engage in real estate lending, and provides, in relevant
> part: "Any national banking association may make, arrange,
> purchase or sell loans or extensions of credit secured by
> liens on interests in real estate, subject to section 1828o
> of the title and such restrictions and requirements as the
> Comptroller of the Currency may prescribe by regulation or
> order." 12 U.S.C. § 371(a). Section 1828o does not contain
> a time limitation. While 12 U.S.C. § 29 does prohibit a
> national banking association from holding "the possession
> of any real estate under mortgage, or the title and
> possession of any real estate purchased to secure any debts
> due to it, for a period longer than five years," this
> provision is inapplicable to plaintiff's Complaint because
> plaintiff does not allege, nor does it appear from the
> record, that any defendant ever possessed the property that
> is referenced in the note and in plaintiff's complaint.

*Barnes v. Wells Fargo & Co.*, No. 4:10CV619 FRB, 2010 WL 3911405, at
*4 (E.D. Mo. Sept. 30, 2008); *see also Barnes v. Citigroup, Inc.*, No.
4:10CV620 JCH, 2010 WL 2557508, at *3 (E.D. Mo. June 15, 2010)
(finding 12 U.S.C. § 29 "inapplicable, as Defendants do not possess
Plaintiff's home"). "[T]hirty-year mortgages are common in the
lending industry." *Wilson v. Bank of Am. Corp.*, No. 4:10-CV-512 CAS,
2010 WL 3843781, at *4 (E.D. Mo. Sept. 27, 2010); *see also Barnes*,
2010 WL 2557508, at *3 ("[N]ational banks are permitted to 'make,
arrange, purchase or sell loans or extensions of credit secured by
liens on interests in real estate,' and thirty-year mortgages are
common in the lending industry.").

> d. *Claims under the Electronic Funds Transfer Act, 15
> U.S.C. §§ 1693 et seq.*

Finally, the references to the EFT are insufficient to invoke federal-question jurisdiction. The complaint refers, in passing, to the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.,* in the count entitled Wrongful Foreclosure." (Amend. Compl., D.E. 5 ¶¶ 36-38.)

The Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA"), was enacted as part of the comprehensive Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA") and "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008)(citing 15 U.S.C. § 1693(b)). Because EFTA is a remedial statute, it is accorded "'a broad, liberal construction in favor of the consumer.'" *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998)).

Under the EFTA, the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. 15 U.S.C. § 1693a(7). Electronic fund transfers covered by the Act have three components: 1) a transfer of

funds, 2) initiation by electronic means, and 3) a debit or credit to a consumer account.

Here, Currie alleges in his complaint that he initiated an EFT transfer by certified mail, not by electronic transfer. His attempted transaction is therefore clearly not covered by the EFTA. Accordingly, the complaint fails to state a claim under the EFTA, and EFTA is not a basis for federal-question jurisdiction.

   c.   *Claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.*

Currie's title of his amended complaint includes a claim for violation of "the Fair Debt Collection Practices Act 'FDCPA'" but does not include a specific count alleging violation of the FDCPA. He references the "FDCA" in three places in his complaint, (Am. Compl. D.E. 5 ¶¶ 16, 20, 21), which the court interprets to be the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To be held liable under the FDCPA, a defendant must be a "debt collector" within its meaning. Notably, the FDCPA distinguishes between the term "creditor" and "debt collector." A creditor is "any person who offers or extends credit creating a debt or to who a debt is owed", while the term "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

27

15 U.S.C. § 1692a (4), (6).  It is "well-settled" generally that "a creditor is not a debt collector for the purposes of FDCPA and creditors are not subject to the FDCPA when collecting their accounts."  *MacDermid v. Discover Fin. Serv.*, 488 F.3d 721, 735 (6th Cir. 2007) (quoting *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003)).  The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).  In other words, the term "debt collector" does not include "the consumer's creditors . . . or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Circ. 1996)(citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).

The allegations in the complaint are insufficient to state a claim against Chase for violation of the FDCPA because the complaint fails to allege facts demonstrating that Chase is a "debt collector" within the meaning of the statute.  (D.E. 1 ¶¶ 18, 22, 23.) On April 10, 2012, the Deed of Trust made by Major Currie to United Companies Lending Corporation (Instrument No. GN 5095) together "with all interest secured thereby, all liens and rights due or to be come due thereon", was transferred to Chase but the assignment document does not state whether the debt was in default at that time.  If the debt was in default at the time of the assignment, Chase could be considered a "debt collector" under the FDCPA.  However, the complaint does not allege enough facts to show whether the debt was

in default at the time it was assigned to Chase. Currie's complaint therefore fails to allege sufficient facts demonstrating that Chase was a debt collector. *See Collins v. Mortg. Elec. Registration Sys., Inc.*, No. 3:11-cv-00264, 2012 WL 610191, at *7 (M.D. Tenn. Feb. 24, 2012)(dismissing FDCPA claim "[b]ecause the instant Defendants are not creditors"), *report and recommendation adopted*, 2012 WL 848041 (M.D. Tenn. Mar. 12, 2011).

To the extent Wilson is considered a "debt collector" under the FDCPA, Currie fails to allege sufficient facts to support a cognizable claim against Wilson for violation of the FDCPA. The FDCPA provides that, upon being assigned the debt, a debt collector must communicate with a consumer in connection with the collection of a debt and send the consumer a written notice containing information about the debt. 15 U.S.C. § 1692g. Currie attached to his complaint as Exhibits 1 and 3, are two letters from Wilson to Currie dated November 15, 2012, and November 29, 2102, which contain information about the debt owed by Currie as required by the FDCPA. The complaint contains no factual allegations supporting a violation of the FDCPA, and therefore Currie has failed to state a viable claim against Wilson under the FDCPA. Accordingly, it is recommended that any claims under the FDCPA be dismissed for failure to state a claim.

In sum, Currie fails to state in his complaint a claim arising under any federal law, and therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 1331.

D.    The Remaining State-Law Claims

Currie purports to assert claims under state law for Fraud and Misrepresentation, (Amend. Compl., D.E. 5 ¶¶ 26-32); Wrongful

29

Foreclosure, (Amend. Compl., D.E. 5 ¶¶ 33-40); Slander of Title, (Amend. Compl., D.E. 5 ¶¶ 41-45); Unlawful Interference with Possessory Interest, (Amend. Compl., D.E. 5 ¶¶ 46-53); Conflict of Interest, (Amend. Compl., D.E. 5 ¶¶ 54-62); and Lack of Standing to Commence Foreclosure Action, (Amend. Compl., D.E. 5 ¶¶ 63-76).[10]

### 1. Jurisdiction over Remaining State-Law Claims

As discussed above, the court has determined that every federal claim asserted by the plaintiff should be dismissed for failure to state a claim and lack of federal subject-matter jurisdiction. Without a basis for federal jurisdiction, the court should not exercise supplemental jurisdiction over any state law claims by Currie. *See* 28 U.S.C. § 1367(c)(3)("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, it is recommended that any remaining state-law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

### 2. Dismissal of Remaining State-Law Claims for Failure to State a Claim Pursuant to Rule 12(b)(6)

The state-law claims should also be dismissed for failure to state a claim because the complaint fails to state any plausible claims under state law. The court has already determined herein that Currie has failed to plead a claim for fraud with particularity as required by Rule 9, in that he failed to identify any false statement

---

[10] In the sections entitled "Injunctive Relief" and "Declaratory Relief," there are no factual allegations. To the extent these sections set forth remedies sought and not causes of actions, these two sections fail to state any plausible claim.

allegedly made by any defendant, and much less, the time and date of any false representations.

Currie's purported state-law claims for Unlawful Interference with Possessory Interest and Conflict of Interest are not recognized torts in Tennessee, and his purported state-law claims for Wrongful Foreclosure and Lack of Standing are not supported by existing state law. It appears these claims are based on the theory that a foreclosure sale is improper because the transfer and/or assignment of the original note in question is invalid. This theory was rejected by this court in *Gibson v. Mortgage Electronic Registration Systems Inc.*, No. 11-2173, 2012 WL 1601313 (W.D. Tenn. May 7, 2012)(Anderson, J.). Under Tennessee law, "the lien of a mortgage or trust deed passes, without a special assignment thereof, to the endorsee of a note or transferee of the debt secured by the instrument." *Id*. at *4. Moreover, Currie has pleaded no plausible facts to support his theory that the transfer of the note was invalid.

Currie's purported state-law claim for Slander of Title likewise is not supported by any plausible facts. To establish a claim for slander of title under Tennessee law, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statement proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999). The complaint fails to allege any malice or any facts that would give rise to a reasonable inference of malice. *See Waterhouse v. McPheeters*, 145 S.W.2d 766, 767 (Tenn. 1940)(allegations of malice must be in express

terms or by showing facts which would give rise to a reasonable inference of malice).  Thus, Currie fails to state a claim for slander of title.

## III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the complaint be dismissed *sua sponte* for lack of subject-matter jurisdiction, pursuant to Rules 12(b)(1) and (h)(3) of the Federal Rules of Civil Procedure, and for failure to state a claim pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2) as to all the defendants, and judgment be entered for all the defendants.

Respectfully submitted this 14th day of June, 2013.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.